UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHAN WADDELL, o/b/o THE
ESTATE OF SHARI LYNN
WADDELL,

     Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

Case No. 19-10444

Stephanie Dawkins Davis
United States District Judge

**OPINION AND ORDER**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 16, 17)**

## I.  PROCEDURAL HISTORY

    A.    Proceedings in this Court

On February 4, 2019, Shari Lynn Waddell filed the instant suit seeking

review of the denial of social security disability benefits.  (ECF No. 1).  On

January 31, 2020, Waddell's counsel filed a notice of suggestion of death,

indicating that Waddell passed away on January 18, 2020.  (ECF No. 20).  On

March 18, 2020, the Court entered a stipulation and order substituting Waddell's

husband, Nathan Waddell, on behalf of the Estate of Shari Lynn Waddell, as

plaintiff in this matter.  (ECF No. 22).  This matter is before the Court on cross-

motions for summary judgment.  (ECF Nos. 16, 17).  Waddell[1] also filed a reply in

support of the motion.  (ECF No. 18).

B.    Administrative Proceedings

Waddell filed an application for a period of disability and disability

insurance benefits on November 29, 2016, alleging disability beginning on

September 18, 2008.  (Tr. 15).[2]  The claims were initially disapproved by the

Commissioner on March 2, 2017.  *Id.*  Waddell requested a hearing and on May

30, 2018, she appeared with counsel, before Administrative Law Judge ("ALJ")

Dennis M. Matulewicz, who considered the case *de novo*.  (Tr. 52-81).  In a

decision dated June 25, 2018, the ALJ found that Guthrie was not disabled.  (Tr.

12-25).  Waddell requested a review of this decision and the ALJ's decision

became the final decision of the Commissioner when the Appeals Council, on

January 30, 2019, denied his request for review.  (Tr. 1-6); *Wilson v. Comm'r of

Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1] On March 18, 2020, the court substituted Nathan Waddell, Shari Lynn Waddell's
husband, as plaintiff in this matter following notification of her untimely passing.  (ECF Nos. 22,
20).  For clarity, references to "Waddell" throughout this Opinion and Order concern plaintiff's
decedent, Shari Lynn Waddell.

[2] The Administrative Record appears on the docket at entry number 14.  All references to
the same are identified as "Tr. "

For the reasons set forth below, the undersigned **DENIES** plaintiff's motion for summary judgment, **GRANTS** defendant's motion for summary judgment, and **AFFIRMS** the findings of the Commissioner.

## II.  FACTUAL BACKGROUND

### A.  ALJ Findings

Waddell, born in 1964, was 44 years old on the alleged disability onset date and 54 years old at the time of the hearing.  (Tr. 60).  She has past relevant work as a postal clerk.  (Tr. 23).  Waddell completed the 12th grade and lives with her husband and stepson.  (Tr. 191, 254).  Waddell stopped working on September 18, 2008 because of her right shoulder replacement, lower back issues, arthritis, migraines, left shoulder tendonitis, and neck pain.  (Tr. 190-191).

In reviewing her claim, the ALJ applied the five-step disability analysis and found at step one that Waddell had not engaged in substantial gainful activity from the alleged onset date through the date last insured of December 31, 2013.  (Tr. 17).  At step two, the ALJ found that Waddell's obesity, right shoulder replacement, cervical spondylosis, lumbar spondylosis, status-post right carpal tunnel surgery, degenerative changes at C4-C5 and C5-C6, and degenerative changes at L4-L5 and L5-S1 were "severe" within the meaning of the second sequential step.  (Tr. 17).  However, at step three, the ALJ found no evidence that

Waddell's impairments singly or in combination met or medically equaled one of the listings in the regulations. (Tr. 18).

Thereafter, the ALJ assessed Waddell's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), subject to the following limitations. The claimant could have lifted 20 pounds maximally, 10 pounds frequently, and 20 pounds occasionally. She could have sat 6 hours, stood 6 hours, and walked 6 hours in an 8-hour workday. She could never have used ladders, scaffolds, or ropes. The claimant could never have used pneumatic, torque, or power tools. She could have performed no reaching for over-the shoulder work with the upper extremities. She could only frequently, but not constantly, have handled, fingered, and felt with the bilateral upper extremities. The claimant could never have worked with hazards including dangerous/unprotected machinery or worked at unprotected heights. She could have occasionally bent, twisted, or turned at the waist.

(Tr. 19). At step four, the ALJ found that was able to perform her past relevant work as a postal clerk. (Tr. 22). In the alternative, at step five, the ALJ concluded there were significant jobs that exist in the national economy that Waddell could perform with her RFC at both the light and sedentary level, including bench assembler, information clerk, sorter, and general office clerk. (Tr. 23-24). Accordingly, the ALJ determined that Waddell was not under a disability from the alleged onset date through the last date insured. (Tr. 24).

## III. DISCUSSION

A. <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

Waddell raises a single point of error in her motion before this court. She claims that the ALJ failed to properly consider her complaint of pain, fatigue, and weakness in accordance with Social Security Rule 16-3p. Soc. Sec. Ruling 16-3p; 2106 WL 1119029 (S.S.A. Mar. 16, 2016). "A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record." *Harley v. Comm'r of Soc. Sec.*, 485 Fed. Appx. 802, 804 (6th Cir. 2012); 20 C.F.R. § 404.1529(c). In assessing a claimant's subjective symptoms, the rulings and regulations direct an ALJ to focus on the consistency of the complaints with the other evidence in the record. *Barncord v. Comm'r of Soc. Sec.*, 2017 WL 2821705, at *8 (S.D. Ohio June 30, 2017). The Sixth Circuit has characterized SSR 16-3p as merely eliminating "'the use of the term credibility ... to clarify that subjective symptom evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 Fed. Appx. 113, 119 n.1 (6th Cir. 2016) (citation and internal quotation marks omitted); SSR 16-3p, 2016 WL 1119029, at *1. "SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically

determinable impairment." *Coffey v. Comm'r of Soc. Sec.*, 2017 WL 3528952, at *8 n. 4 (E.D. Tenn. Aug. 16, 2017). As to a claimant's subjective symptoms, the regulations require an ALJ to consider several factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 ("In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3).").

Waddell argues that the ALJ improperly questioned the degree of her impairments based on his perception of the severity of the objective findings. Specifically, Waddell says that the ALJ erred by stating that the medical records show relatively little care during the period at issue, while the ALJ's own medical summary pointed to her treatment for partial shoulder replacement, total shoulder replacement, rhizotomy, MRI studies, physical therapy, x-rays and electrodiagnostic studies. (Tr. 51). Waddell also highlights findings from her treating doctors showing degenerative changes, cervical and lumbar spondylosis

and disc root involvement. She maintains that these changes would prevent her from performing substantial gainful activity in that they would preclude her from working a full 8-hour day. (Tr. 252-261). According to Waddell, the ALJ's opinion that "overall, the objective evidence does not support the claimant's allegations regarding severity of symptomology as a functional limitation," fails to follow the regulations providing that the agency must analyze symptoms directly related to objectively identified medically determinable impairments.

In response, the Commissioner first points out that Waddell must show that she became disabled before the date last insured (DLI) of December 31, 2013, yet the evidence pre-dating the DLI is limited:

- On December 29, 2008, plaintiff had a cervical MRI exam, which showed degenerative disc disease (Tr. 441-42);

- On June 24, 2009, plaintiff underwent a right carpal tunnel release surgery (Tr. 437-38);

- On March 22, 2013, plaintiff saw Dr. Steven Rapp for a neurosurgical consultation due to neck and low back pain, and numbness/weakness in her right hand (Tr. 254-57); and,

- On March 22 and 26, 2013, after her appointment with Dr. Rapp, plaintiff underwent an EMG exam, which showed mild carpal tunnel on the right, and a myelogram/CT of her cervical and lumbar spine, which showed issues that included degenerative changes and arthritis. (Tr. 258-61).

Based on these limited records, the Commissioner contends that the ALJ properly found that Waddell's complaints were not consistent with the evidence. (Tr. 20).

More particularly, the Commissioner argues that the ALJ thoroughly considered Waddell's subjective complaints and found that they were "not entirely consistent" with the evidence. The Commissioner contends that the ALJ's conclusion was based on several compelling factors, including that "the medical evidence documents relatively little care during the period at issue." (Tr. 20). As set forth above, for the five-year span between the alleged onset date and the date last insured, Waddell received little treatment. (Tr. 254-57). Under SSR 16-3p, the Commissioner maintains that the ALJ was permitted to consider this factor and weigh it against Waddell's allegations that she was totally disabled and unable to work.

The Commissioner also points out the ALJ considered that, "while the claimant did show some physical abnormalities during appointments, these did not rise to a level consistent with the severity of her alleged limitations" (Tr. 20), which is another legally valid consideration. SSR 16-3p, 2016 WL 1119029, at *4 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms"). The Commissioner argues that while the ALJ correctly noted that Dr. Rapp's March 7, 2013 report reflected some abnormal findings, this was a single examination before the DLI, and this same report also reflected normal findings as to plaintiff's gait (see Tr. 21, supported at Tr. 256). Although there are also some abnormal findings in Dr.

Rapp's report (see Tr. 255-56), the Commissioner maintains that the ALJ correctly

concluded that they did not indicate a disabling impairment. (Tr. 20). According

to the Commissioner, the ALJ's analysis of Dr. Rapp's report is supported by state

agency physician Dr. R.H. Digby. Digby was the only doctor who issued an

opinion about Waddell's RFC, and who expressly considered Dr. Rapp's

examination (Tr. 85 (recounting the findings from Dr. Digby's "3/7/2013"

treatment note)). Further, the absence of an opinion supporting her disability claim

weighs against her. *See King v. Comm'r of Soc. Sec.*, 2015 WL 12697639, at *6

(E.D. Mich. Dec. 3, 2015) (finding that ALJ properly "reasoned that no physician

imposed any work-preclusive functional limitations on Plaintiff or opined that

Plaintiff was completely disabled"), rep. and rec. adopted, 2016 WL 837167 (Mar.

4, 2016).

The Commissioner urges the Court to reject Waddell's claims that the ALJ

"is not allowed to question the degree of impairment simply based upon his

perceived severity of the objective findings." Instead, the Commissioner posits

that the ALJ properly considered the objective findings as one of several factors

that supported her decision about Waddell's subjective allegations. (Tr. 19-23);

*McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) ("Subjective claims

of disabling pain must be supported by objective medical evidence in order to

serve as the basis of a finding of disability.") (internal citation omitted). The

Commissioner also notes that the ALJ's assessment is consistent with Dr. Digby's opinions. (Tr. 22, 85, 87-89). And, the Commissioner contends that the ALJ's consideration of Waddell's limited treatment during the covered period was entirely appropriate considering there is only one treatment note in the record for the entire period between September 2008 and December 2013. (Tr. 254-57). To the extent that Waddell relies on her MRI, EMG and/or myelogram studies, the Commissioner says that these are only diagnostic tests and "[t]he mere diagnosis of [an impairment] says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. Case 1988); *see also Flowers v. Comm'r of Soc. Sec.*, 2015 WL 4274961, at *4 (E.D. Mich. July 14, 2015) (declining to remand because "the MRI and the CT scan reports provide no insight into what additional limitations Plaintiff may suffer from based on the diagnoses therein" and "[a]t most, Plaintiff leaves the ALJ and the Court to speculate with regard to any possible limitations related to his neck").

The Court concludes that the ALJ's assessment of Waddell's subjective symptoms is supported by substantial evidence. Contrary to Waddell's argument, the ALJ did not rely solely on the objective medical evidence; such evidence was but one  factor in the ALJ's analysis. And, it was entirely appropriate. SSR 16-3p, 2016 WL 1119029, at *4 ("In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including

the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

The ALJ also considered a number of other factors, including Waddell's strong work history as a factor supporting her claim. (Tr. 22). The ALJ noted that the medical record contained only minimal treatment or complaints even during the period before the alleged onset date. (Tr. 22). Lack of treatment for such a long period suggests Waddell was less restricted, and in less subjective pain, than alleged. *Baker v. Colvin*, 2017 WL 3269390, *3 (W.D. Tenn. Aug. 1, 2017) (citing *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 845 (6th Cir. 2004) ("Claimant simply failed to present any contemporaneous medical evidence of disability from the relevant time period."); *see also Friend v. Comm'r of Soc. Sec.*, 2014 WL 4908751, *8 (S.D. Ohio Sept. 30, 2014) ("The lack of any medical treatment casts considerable doubt on his claims that he was disabled during the relevant period.").

Next, the ALJ noted that the record did not contain any opinions from treating or non-treating medical sources indicating that she was so limited that she could not work between the alleged onset date and the date last insured. (Tr. 22). The ALJ also observed that Dr. Digby's opinions were largely supported by the medical evidence, although the ALJ found that Waddell was more limited than Dr.

Digby's assessment. (Tr. 22, 87-90). The lack of any treating physician opinion suggesting she is more limited than the ALJ found her to be undermines Waddell's claim that she is disabled and supports the ALJ's assessment of her subjective symptoms. *See Kimbrough v. Comm'r of Soc. Sec.*, 2010 WL 3862710, at *7 (E.D. Mich. Aug. 19, 2010) ("As the ALJ noted in his decision, '[a]s for the opinion evidence, there are no treating source opinions.' Under the circumstances, the ALJ properly relied on the opinions of the state agency examiners.") (citations omitted), aff'd, 2010 WL 3842159 (E.D. Mich. Sept. 28, 2010); *Toins v. Comm'r of Soc. Sec.*, 2014 WL 6389582, at *15 (E.D. Mich. Nov. 14, 2014) (upholding ALJ's RFC finding where "plaintiff [failed to point to] record evidence that any of her treating physicians made . . .findings as related to [p]laintiff's functional limitations," and "plaintiff has not provided an explanation as to how the ALJ erred in considering the non-treating source's opinion absent any other treating-source opinion"). Waddell does not point to any opinion evidence suggesting she is more limited than as found by the ALJ.

Further, Waddell's diagnoses and imaging studies alone do not establish disability. *Richard v. Astrue*, 2011 WL 4688788, at *5 (N.D. Ohio Oct. 4, 2011) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) ("it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment."); *Hill v. Comm'r of Soc. Sec.*, 560 Fed.

Appx. 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."); *Cargile v. Comm'r of Soc. Sec.*, 2015 WL 2084701, at \*4 (S.D. Ohio May 4, 2015) ("It is plaintiff's burden to provide evidence showing how her impairment has affected her functioning during the period of alleged disability."); *Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 930 (6th Cir. 2007) ("The mere existence of . . . impairments . . . does not establish that [the plaintiff] was significantly limited from performing basic work activities for a continuous period of time."); *Flowers v. Comm'r of Soc. Sec.*, 2015 WL 4274961, at \*4 (E.D. Mich. July 14, 2015) (declining to remand because "the MRI and the CT scan reports provide no insight into what additional limitations Plaintiff may suffer from based on the diagnoses therein" and "[a]t most, Plaintiff leaves the ALJ and the Court to speculate with regard to any possible limitations related to his neck"); *Randolph v. Comm'r of Soc. Sec.*, 2016 WL 7206711, \*6 (E.D. Mich. Aug. 16, 2016) (finding no error in the RFC finding where the plaintiff cited only evidence the ALJ specifically considered, and failed to "show how these studies establish[ed] that his ability to stand or walk was more limited than the ALJ found").  Here, Waddell has not shown how the imaging studies in the record show that she is more limited than as found by the ALJ.

Moreover, the ALJ carefully examined Waddell's abilities as she described them, noting where it appeared that the severity of her complaints were not entirely consistent with her abilities and activities: "Despite her history of carpal tunnel surgery, … she indicated that even in 2017, her hobbies included crochet, cross stitch and playing video games, although if she did too much stitching her hand would cramp"; "she was able to use a computer on a daily basis to socialize with others"; in February 2017, she estimated she could lift 10 pounds and walk a block or two; when she stopped working, she could continue to bowl if she used both hands; her shoulders were less painful after surgery, although she did lose range of motion; at the hearing, she said she could walk a mile, but it would be painful and would require her to take medication; she does not use a cane or walker and can use the stairs.  (Tr. 19-20).

Waddell does not explain why the ALJ's assessment is unsupported by substantial evidence in light all the various factors considered by the ALJ in assessment her subjective symptoms based on the entirety of the record. Accordingly, the Court finds no basis on which to disturb the ALJ's conclusions.

**IT IS SO ORDERED**.

Dated: March 20, 2020                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States District Judge